Case number 14-3027, Henry Byron Lamont McDade, also known as Barry Petitioner. Ms. Goldstein for the amicus curiae, Mr. Perez for the respondent. Good morning. Good morning. My name is Stephen Goldblatt. I'm a professor at Georgetown University Law Center, and I was appointed in this case to be an amicus curiae in support of Mr. McDade. The court's permission argument today will be presented by Jennifer S. Goldstein, a third-year law student at the Law Center, who is appearing in conformity with the rules of this court. Thank you very much. Thank you. Good morning. Good morning. Good morning, Your Honors, and may it please the Court. Amicus respectfully contends, although other courts of appeal have held otherwise, that Section 2255 of AEDPA cannot be read literally to apply to Brady claims, because to do so would bar meritorious Brady sentencing claims and some Brady trial claims from review, as long as the suppressed evidence remains suppressed until after the petitioner's first 2255 motion. The Supreme Court in Panetti and Magwood instructed against reading AEDPA literally to foreclose review of meritorious claims without a clear expression of congressional intent. Because Congress expressed no intent to foreclose review of certain Brady claims, Amicus respectfully requests that this Court transfer McDade's second petition back to the District Court for review, because this claim is not successive. First, Amicus acknowledges that no other court of appeal has exempted Brady claims from the successive bar. However, those courts' opinions are not instructive to this Court, because many of them were decided before Panetti or Magwood. So can I ask you one question? So is your proposed rule that Brady claims as a category, all Brady claims just fall outside the second or successive apparatus? Yes. So what would happen in a situation, for example, in which the government disclosed the evidence before the first 2255, and for some reason the Brady claim wasn't raised? So it was always there for the first one. And then in the second one, the Brady claim is raised. So when the petitioner is on notice that there is Brady material eventually available to them, they are under an obligation to raise those claims in the first petition. So petitioner here or, I'm sorry, Amicus here maintains that it's precisely because many Brady claims, the evidence to provide the basis for a Brady claim, are suppressed past the time at which the petitioner files the first petition, that Brady claims as a whole cannot be subject to the 2255 bar. But what would happen in that situation for the second one? So it's undoubtedly a second petition in that the first petition was filed and dealt with. The Brady claim was available the first time. It wasn't raised for whatever reason. Brady claim is raised in the second one. Would we just say that we'll, under your rule, that we just go to the merits of the Brady claim because it's a Brady claim? Absolutely not. The district court still maintains the ability to, before reaching the merits of the claim, to assess whether that claim falls under procedural default rules and abuses the writ and can dismiss that claim at that time. The only point at which the district court would reach the merits of the Brady claim is if it would survive abuse of the writ. So in that case, the claim would likely be procedurally defaulted. So your view of the way the statute works is that abuse of the writ is preserved. So every time, no matter if it's a Brady claim or not, every time there's any kind of claim raised, if it gets past the second or successive or if it falls outside second or successive, district courts, as a rule, just apply abuse of the writ. So we maintain that when claims as a whole, such as court claims, survive abuse of the writ, then they're not in, the Congress did not intend to subject them to the successive bar unless they express clearly, their clear intent to do so under the statute. So when claims as a whole tend to survive and they're exempt from the successive bar, the district court, again, would not go straight to the merits of the claim. They would, again, immediately review for abuse of the writ and procedural default before considering the merits. And abuse of the writ determines whether it's second or successive, whether the filing is second or successive? Not to each individual claim, but when certain claims in their circumstances tend to survive abuse of the writ, unless there's a clear expression of congressional intent to subject them to the successive bar, we maintain that the court's precedent in Pinetti and Magwood, counsel against reading ethical literally to foreclose review claims that would have survived abuse of the writ by applying the successive bar. Okay. Would it be unconstitutional, then, in your view, to apply this statute as written to Brady claims? So we maintain that some constitutional issues are raised when meritorious claims are foreclosed for review without, when meritorious claims are foreclosed from review. But here we really think that this court can resolve this from a pure statutory interpretation standpoint, in that if Congress didn't clearly enunciate an intent to subject Brady claims to the successive bar, this court should not read ethical literally to do so when that would raise certain issues. Well, how serious is the constitutional issue, though? Because doesn't that really guide us in whether we think there's a problem with just applying the statute as written? Because I think you acknowledge, I think it's appropriate, that as written, the statute would seem to cover this because it actually does map well onto the idea of newly discovered evidence that you didn't have before and then meeting some heightened standard. The problem, as I understand it, in your view, is the heightened standard and the delta between a Brady claim and that heightened standard and also the sentencing aspect of this, right? Amicus actually maintains that the newly discovered evidence standard is not a clear expression of congressional intent to subject Brady claims to the successive bar. Because as the court noted in Aggers, there are different standards that apply to newly discovered evidence claims, which can routinely be raised by the first petition, as opposed to Brady claims. Because the court noted that if the same standard applied to both, then there would be no special significance to the prosecutor's duty to disclose any exculpatory or impeaching evidence. So it's that precise duty that we want to protect in reading the statute narrowly, because otherwise, all that needs to happen is the suppressed evidence must remain suppressed until after the first petition, and then the petitioner is essentially out of luck. And we don't want to read EDPA in a manner that would, or we don't believe Congress intended EDPA to be read in a manner to protect prosecutorial misconduct from review. So that, again, speaks to one reason why we don't believe Congress expressed a clear intent to include Brady claims in the successive bar. Another reason. I guess what I'm asking is, is there another way to get to the result you seek, which is to say Brady claims do fall within this statute, but there might be a constitutional problem with applying the heightened standard of evidence that you would need to show a successful claim under this statute. And therefore, we should construe the statute to avoid that constitutional problem, not by eliminating Brady claims from the statute, but by relaxing the standard in those cases that are Brady claims under the statute. Do you understand what I'm saying? Yes, certainly. That speaks to our second argument, which is the fact that the successive bar, wholesale bar, is a consideration of Brady sentencing claims counseled toward just ascertaining whether the petitioner in fact alleges a Brady claim, and at that point can, you know, send back to the district court for more, you know, for the application of abuse of the right and a merit-based analysis if they get past that. On the merits of the Brady claim here, it does not seem like there's massive inconsistency in Webster's testimony here. It does describe, in both trials, it seemed to me, describe a similar role. So can you respond? And maybe that's an easy way to resolve this case, is that we don't need to resolve what the standard should be for Brady claims that come within the statute, because there's really not anything here in terms of a Brady claim. So Amicus respectfully maintains that there is, in fact, a Brady claim here. The fact that Webster maintained in McDade's trial that he essentially took over her operations and that she didn't sell drugs anymore, and then in the Gray trial said that she technically sold the drugs and just gave, you know, the drugs out to distribute, conflicts with this court's precedent in applying the sentencing enhancement, because in order to be found, in order to be a lieutenant, as the government maintained McDade was, you need to do more than just simply distribute drugs. There has to be a measure of control placed over the people below you. And in this sense, we think that Webster's testimony shows clearly that, you know, or shows that the sentencing enhancement may not have been warranted based on the facts. And if it were disclosed, McDade could have impeached her, or at least introduced that evidence to mitigate her damaging testimony, which even the Court of Appeals acknowledged was a basis for finding the sentencing enhancement. So in that sense, we do think the Brady claim is there. And again, this court need only find that McDade did, in fact, allege a Brady claim in order to pass that hurdle. And here the government and amicus agree that McDade did, in fact, allege a Brady claim. Right. I know it's alleged. I'm just saying, does it even, my question was more, does it rise to the level of showing some kind of inconsistency in the testimony? And you answered that, but it does seem like it's maybe shades rather than inconsistent. Certainly, Your Honor, and this court could find that. However, again, the factual underpinnings of the Brady claim and the level to which it meets the merits analysis is really a place where the district court would be best suited to analyze the claim because they presided over the trials and they have a better familiarity with the full record. So again, here, you know, we don't want the Court of Appeals to get into the business of delving into each individual fact and deciding the merits to that degree. The Court of Appeals job is really to see whether a Brady claim is alleged or if people just, or if petitioners just allege facts and then slap the label of Brady on it. And here, there's no dispute that there was a Brady claim alleged. Where does the prima facie part of the statute fit in? So we maintain that the Court of Appeals merely need to decide that McDade alleges a prima facie Brady claim to allow the district court to consider the merits on a deeper level. And so here, again, based on the reasons I just articulated, you know, both sides maintain that he establishes a prima facie claim. And it's just a question of the merits at this point to whether, you know, the discrepancy McDade alleges rises to the level of material such that, you know, the government had an obligation to disclose. And here, you know, that's, again, amicus contensus.  And what does that mean? So the Court of Appeals at least has the responsibility, even under your view, to assess whether there's a prima facie Brady claim made. If this court finds that Brady claims as a whole are successive, then yes, there would need to be an initial showing of a prima facie Brady claim. However, if you're willing to buy into amicus' argument that, you know, Brady claims are accepted, you only need to show that he alleges a Brady claim, which both sides concede. Thank you. Thank you. We'll give you time for rebuttal. Thank you very much. Thank you. Good morning. May it please the Court. James Perez on behalf of the government. I tend to agree with Judge Kavanaugh's assertion that the easiest way to resolve this case is to find that there is no Brady claim. There's not even a prima facie Brady claim on these facts. That's not the easiest way. Well, it is the easiest way, so it was untimely. That's even easier, yes, Your Honor. However, every circuit agrees that non-material Brady claims are subject to 2255H1's gatekeeping requirement. Because this is a non-material Brady claim, and, of course, we think it's a Brady claim that's untimely. That's our first argument to be sure. We're not abandoning it. But to pick up on Amiki's argument here today, because this is a non-material Brady claim, that resolves the issue as to the harder issue as to what Dat Lopez addressed in that evidence. So non-material Brady claims, that evokes the Ninth Circuit's approach, because the Ninth Circuit has said that they don't need to resolve certain issues as long as they can say at the outset, Brady claim doesn't get past Brady materiality. Right. And if it doesn't get past Brady materiality, then it's not second or successive. Right. And just what seems odd to me about that is that you're assessing whether there's a good Brady claim in order to determine whether the Brady claim can be brought. Well, yeah, it is kind of backwards. However, I think what the Ninth Circuit was saying in Lopez is that if you look at the abuse of the writ standard that came before ADEPA in 1996, you had to essentially determine the merits there, too. You have to show cause and prejudice, and prejudice decides on whether or not it turns on a material Brady claim. So the court was saying, even under the abuse of writ doctrine, and before ADEPA or ADEPA, a non-material Brady claim cannot go forward as a second or successive motion. And what the court was saying is we don't know what the audit limits of 2255H1's gatekeeper requirement is, but we know at the very least that non-material Brady claims are subject to 2255 statute. I just don't quite follow how that squares with the words of the statute. Where in the statute do you get the assessment of whether the Brady claim passes Brady materiality? What words of the statute? Well, 2255, to be sure, our first argument is we think that the statute is clear that all Brady claims, material and non-material, falls under 2255H1. Right, no, I get that. To be sure, that's our first argument. Right, but the fallback argument is that at the very least, non-material Brady claims fall under that. And I don't think that Lopez was particularly looking at the statute as it was looking at the purpose of the statute. In other words, what Lopez said is everyone agrees that ADEPA gatekeeper requirement is not, it did not expand the abuse of grit doctrine. Right, it made it narrow. Everyone agrees, the courts don't necessarily agree how much narrow, but everyone agrees that it did not expand it. So if it does not, just as a matter of logic, if it does not meet the abuse of grit doctrine, it doesn't meet 2255H1 gatekeeper requirement. So I don't know that the court was looking anywhere in particular at the 2255H1 language. At the language of the statute, right. Right, it was just looking at the purpose of ADEPA. Well, it was also looking at potential constitutional problems, right? I mean, and I guess my question for you is does the government think there's a constitutional problem with requiring Brady claims to meet that fall within this statute that are second or successive? In other words, to meet the heightened standard of showing by clear and convincing evidence that no reasonable fact finder would have found the movement guilty of the offense. We don't, Your Honor. Well, first, we don't think Your Honor needs to decide the issue in the first place because we think it's not a Brady claim. However, if the court disagrees with that, we don't. I think in 1996, the provocation that we cite to the Supreme Court, the Supreme Court very clearly says that the added, quote, the added restrictions which the Act places on second-heaviest petitions are well within the compass of this evolution process. And what they were talking about is the evolution process of limiting second or successive motions. But if you had no opportunity to discover the Brady claim before and you're the defendant and you have to go in with this second-heaviest motion because you've already had one, but you've never had an opportunity to make the Brady claim before, and you would meet the ordinary Brady standard and thus have your conviction overturned, you say that that person gets no relief? We think that under the statute, very clearly. I don't think we can assume that Congress did not envision that circumstance. But nevertheless, what Congress said is that... Now, I'm getting to the Constitution, though. Do you think the due process clause would allow that, in essence, that a Brady claim, a successful Brady claim that you could not have discovered before with all the diligence in the world, a successful Brady claim, nonetheless, is not going to be heard by the federal courts because of the statutory bar? I think if the Court reads Pelfer, the Supreme Court decision in Pelfer, where it says that we hold to date that the added restrictions on second motions, heaviest motions, does not constitute a suspension of the writ, I think, yes, the Court is saying these added restrictions are not unconstitutional. I will also mention... That might be true for a lot of claims because I think it's generally acknowledged that a litigant by conduct can relinquish the opportunity to have a court pronounce on the merits of even a meritorious constitutional claim. Yes. But on Brady in particular, I mean, I guess then what you're saying is Congress could pass a statute that said from here on forward, every Brady claim, the constitutional standard the Supreme Court laid down on Brady is no longer binding. Every Brady claim the defendant has to show by clear and convincing evidence that the verdict definitely was wrong. No, that's not what we're saying. We're saying with respect to second heaviest petitions, Congress controls that jurisdiction of federal courts. So Congress can enact a higher standard for Brady claims. Of course, it can't change the standard of Brady. But it controls the jurisdiction of all federal cases too. So for federal court cases, why couldn't Congress do that? But at the same time, Supreme Court has already laid down the standard for Brady claims in the first instance on direct appeal. We're not dealing with that here. We're dealing with a second heaviest petition. And Felker says that that is within that gatekeeping. But I think the point of Judge Kavanaugh's question is that whether it's a first heaviest petition, second, third, fourth, fifth, and just to make it truly federal, just say 2255 instead of heaviest. So we're dealing exclusively with federal cases in which Congress sets the parameters of federal jurisdiction. By hypothesis, the government will withhold the evidence until the time of the instant heaviest petition. Suppose it's the fifth one. So the defendant has no opportunity whatsoever to know even the existence of a Brady claim. Your Honor, first of all, that's not the case here. So we're really dealing with a hypothetical. I'll stipulate that we're dealing with a hypothetical. But I guess the hypothetical informs the way we're supposed to read the statute. And if the hypothetical is that the government withholds the evidence until the fifth heaviest petition, and then now the defendant knows, the question is can Congress constitutionally say, even though you never had an opportunity to know about your Brady claim before, you have to do more than meet the normal Brady standard. You have to show by clear and convincing evidence that the verdict would have been different. The way I read Felker, Felker says Congress does have the authority to set the gatekeeping requirements. And I don't think we should assume that Congress did not envision that circumstance. To the extent amicus or anyone else has a problem with that hypothetical, which is not the case here, then they can petition Congress to change the statute. So does the government then have an incentive under the way the statute is written, under your view, just to withhold Brady evidence until after the first heaviest, 2255? Of course not. We have ethical obligations, obviously, to disclose Brady claims. But, again, because that's not the case here, it's really hard to deal with hypotheticals. And perhaps if there was a blatant violation of Brady claims, perhaps the court can deal with that issue when it comes. Well, isn't then the easier way to resolve this to say, or one easy way to resolve this, to say Brady claims are subject to the statute, but whether you have to meet the heightened standard in the statute as opposed to the Brady standard really can wait for another day because this claim, in this case, doesn't even meet the ordinary Brady standard. It doesn't even meet the prima facie. I do think that's an easy way to resolve this case. And if I could just have ---- Yes, you can respond. On the testimony issue of why it doesn't meet the standard, can you respond to the argument that Ms. Goldstein laid out? Well, in the Gray trial, Phyllis Webster testified, and this is on the September 26th, a.m., page 29 of the transcript in the Gray trial, which we supplemented in our appendix. She testified that McDade, quote, was the one who oversaw everything. He delivered the kilos to the customer. He received the money and counted it up, and he brought it back to me. That's totally consistent with what she testified in McDade's trial. There's nothing inconsistent about that. She testified consistently about who Nunn was in McDade's trial. She testified consistently about who Nunn was in the Gray trial. So apart from there just being no inconsistency between her testimonies or no prima facie inconsistency between her testimony in the two trials, we also could look at this Court's direct appeal opinion, the non-public opinion, in which the Court determined whether or not there was evidence of McDade being a manager, and the Court pointed to three things. The Court pointed to Webster's testimony. It pointed to James Miles' testimony, who was one of Webster's customers, wholesale customers, and Benjamin Ash's testimony, who was one of Webster's wholesale customers. Both of those individuals testified that they dealt with McDade exclusively after a certain point. Not only did they testify to that, Benjamin Ash, and this is related in the Court's direct appeal opinion, Benjamin Ash testified that on two occasions he paged McDade to get cocaine, and instead of McDade delivering the cocaine, a separate individual by the name of Blott delivered the cocaine. So that right there in and of itself shows that Mr. McDade had some managerial control over other individuals, this individual being Mr. Blott. So those two things in combination, no inconsistency, even if there was a slight inconsistency, no materiality on the managerial claim shows that there is a non-material grade claim here. That resolves every other issue I think in the case, including the constitutional issues that are lurking in the case. Judge Friedman had mentioned that this would be a prime case for Executive Clemency. Do you know the status of that? No, Your Honor. Unless the Court has any questions, further questions, we're asked that the motion for authorization be denied. Thank you. Thank you. We'll give you two minutes for rebuttal. Thank you, Your Honors. First, Amy just wants to highlight that there is a difference between a full merits review of this case versus simply deciding whether McDade alleged a prima facie Brady claim. The merits review we maintain are really a matter for the District Court, and here the Court has enough evidence before it to determine that McDade does in fact allege a prima facie Brady claim. And as such, simply saying that it's a non-meritorious Brady claim does not dispose of this case as easily as it did in Lopez. Here the Court has to reach the broader issues. And in response to your constitutional questions, Your Honor, Felker does indeed say that Congress can modify abuse of the right on the successive petition. However, what Panetti and Magwood make clear is that Congress can only do so when it has expressed a clear intent to do so. They've declined to read into AEDPA a strict application where meritorious constitutional claims are foreclosed without that clear expression of intent. And for the three reasons I mentioned in my opening, Your Honors, we do not believe that Congress clearly expressed that intent any place in the statute. First, because Brady claims to satisfy the cause of abuse of the writ by the nature of suppression of evidence. And as such, they shouldn't be subject to the successive bar as a matter of course. And second, because Brady claims fall under a different standard of newly discovered evidence, as the Court discussed in Eggers, in that it is distinct. The prosecutor's obligation to disclose exculpatory or impeaching evidence is special. Does his claim go to his guilt or does it go to his sentence? His sentence, Your Honor. So what do you do? I mean, the statute says that a reasonable juror doesn't do sentencing. Certainly, Your Honor, but the judge can evaluate whether his sentencing was adequate in light of the fact that he might have not had Brady information, in light of his Brady claim. So, again... No, what I'm asking about is that the last section of 2255 for newly discovered evidence, it doesn't apply because it doesn't go to his guilt. Correct, Your Honor. 2255H completely forecloses review of sentencing claims, so this claim also would not even be considered under the bar. But, again, we maintain that because Congress did not express a clear intent to subject those claims to the successive bar to begin with, this Court should not read AEDPA so strictly, as the Supreme Court mentioned in Panetti and Magwood. And so, Your Honors, that's why amicus respectfully requests that you transfer this Court, this case, back to the District Court for a merits-based analysis. Ms. Goldstein, you are appointed by the Court. And, Mr. Goldblatt, thank you for the excellent briefing and argument. We appreciate it very much. Thanks. Case is submitted.
judges: Kavanaugh, Srinivasan, Randolph